UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,   CRIMINAL NO. 06-280 (PJS/JSM)

   Plaintiff,

v.   REPORT AND RECOMMENDATION

ALEXISUS JARMON MOSBY,

   Defendant.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on for hearing before the undersigned upon Alexisus Jarmon Mosby's Motion to Suppress Evidence Obtained as Result of Search and Seizure [Docket No. 17]. Tricia A. Tingle, Assistant United States Attorney, appeared on behalf of the United States of America; Paul D. Schneck, Esq., appeared on behalf of the defendant, Alexisus Jarmon Mosby, who was personally present.

Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearing, and testimony taken from Officer Charles Greaves, it is recommended that the defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 17] be **DENIED**.

I.   **FACTUAL BACKGROUND**

Minneapolis Police Officer Charles Greaves testified that in the early morning hours of June 30, 2006, Officers Greaves and Tuma of the Minneapolis Police Department were on patrol in North Minneapolis in their squad car. Tr. 9. Officer Tuma was driving the car, and Officer Greaves was seated in the front passenger seat. Tr. 10.

The officers received information from another squad car that a person with a gun was in the parking lot at Club 200, an establishment located on Broadway in North Minneapolis. Tr. 11. The person with the gun was described as a black male wearing a white t-shirt, black pants, a do-rag[1] and braids in his hair. Tr. 22-23.

At approximately 1:20 a.m., the officers entered the parking lot at Club 200 in a fully-marked squad car. Tr. 9. Both officers were dressed in uniform. Tr. 10. As the officers entered the parking lot, they observed about 10 to 20 people standing in the parking lot. Tr. 11. Officer Greaves noticed three people standing together toward the west side of the lot. Id. As the squad car entered the lot, one male in the group of three began walking east. Id. This person was subsequently identified as defendant Alexisus Jarmon Mosby. As Officer Tuma drove the car further into the parking lot, the officers saw that defendant had started running and no one else in the parking lot was running. Id. Officer Greaves exited the squad car and began to chase defendant on foot. Id. Defendant began running north on Second Street North, and Officer Greaves followed him. Tr. 12. Officer Greaves testified that defendant was clutching his waistband area as he was running. Tr. 13. After about a block, defendant approached another bar called Stand Up Frank's, located at the corner of 21st Avenue North and Second Street North. Tr. 13-14. As defendant approached the corner, he slowed down and threw a metallic-colored object underneath a car parked on the street. Tr. 16. Officer Tuma then drove the squad car up to Stand Up Frank's, and intercepted defendant, who was still running. Tr. 14, 16. After defendant was placed in custody, Officer Greaves walked back to the spot where the object had been tossed and discovered the object to be a

---

[1] A do-rag is a simple piece of cloth tied at the back, used to cover the head.

.357 revolver. Tr. 16. The officers subsequently placed defendant in the squad car and took him to be booked. Tr. 18. Defendant was dressed in a white t-shirt and blue jeans. Tr. 23. He was not wearing anything on his head, and his hair was close-cropped and not in braids. Id.

**II.    ANALYSIS**

Defendant argues that the revolver seized by police must be suppressed because the officers did not have a reasonable, articulable suspicion that he was involved in any criminal activity or that he was armed. Underlying this argument is defendant's contention that he had been seized at the point when he allegedly threw the gun, and that because the police did not have reasonable suspicion to seize him, any evidence obtained as a result of that illegal seizure must be suppressed. In opposition, the Government asserts that the officers did have reasonable suspicion sufficient to pursue defendant, and further, that no seizure of defendant had occurred at the time the gun was thrown. Therefore, according to the Government, because defendant had not been seized at the time he discarded the gun, the gun was abandoned when Officer Greaves discovered it and it cannot be found to be the fruit of an illegal seizure.

This Court concludes that defendant's motion to suppress should be denied. First, defendant's conduct evidenced a voluntary abandonment of the revolver, and consequently, he had no legitimate interest in the property. Second, at the time defendant discarded the revolver, he was not "seized," within the meaning of the Fourth Amendment, and thus, the subsequent confiscation of the abandoned revolver by Officer Greaves, was not illegal. Third, even if this Court were to find that defendant

had been seized at the point he threw the revolver, and that the taking of the revolver was the fruit of that seizure, this Court concludes that defendant's seizure was valid.

"The warrantless seizure of abandoned property does not violate the Fourth Amendment." United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citing Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960)). This is because when an individual voluntarily abandons property, they relinquish any expectation to privacy they might have had in the property. See Segars, 31 F.3d at 658 (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.), cert. denied, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983)). In ascertaining whether property has been abandoned, this Court must look to the totality of circumstances available to law enforcement officers, including whether there was a verbal denial of ownership and physical relinquishment of the property. See United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999) (citing United States v. Landry, 154 F.3d 897, 899 (8th Cir. 1998), cert. denied, 525 U.S. 1086, 119 S.Ct. 836, 142 L.Ed.2d 692 (1999) (8th Cir. 1999); see also Segars, 31 F.3d at 658 ("An expectation of privacy is a question of intent, which 'may be inferred from words spoken, acts done and other objective facts.'") (citations omitted).

The evidence in this case shows that during defendant's flight, Officer Greaves observed a metallic-colored object under a car by defendant. Officer Greaves testified that defendant slowed down "quite a bit" when he allegedly threw the revolver, and that he then "made a move over towards the rear of the car, tossed it, and then continued again north on 2nd Street." Tr. 26. Defendant made no attempt to recover the item at any point. This Court finds that defendant's initial action of discarding the revolver and the manner in which he did so, coupled with his failure to pick it up, demonstrates that

4

he intentionally abandoned the firearm. Further, the fact that defendant was being pursued by police does not render defendant's abandonment of the handgun involuntary. See Segars, 31 F.3d at 658 ("'The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary.'") (quoting Jones, 707 F.2d at 1172). The voluntary relinquishment of the handgun by defendant leads this Court to the conclusion that he has no legitimate right of privacy to object to its seizure.

Further, the Court finds that at the time defendant discarded the revolver, he was not "seized" within the meaning of the Fourth Amendment. Contrary to defendant's contention, the abandonment of the gun did not occur when he was stopped by Office Tuma, but rather took place prior to his capture by the officers. "Police pursuit in attempting to seize a person does not amount to 'a seizure' within the meaning of the Fourth Amendment." County of Sacramento v. Lewis, 523 U.S. 833, 844, 118 S.Ct. 1708 (1998), citing California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547 (1991); United States v. Taylor, 462 F.3d 1023, 1026 (same). "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." Hodari D., 499 U.S. at 626. To constitute seizure of a person, there must be either application of physical force or submission to an officer's show of authority to restrain the subject's liberty. Id. at 626.

At the time defendant allegedly threw the gun beneath the parked car, he had slowed down but was still running from Officer Greaves. Tr. 16. It was not until after defendant had discarded the gun that he was intercepted by Officer Tuma and restrained. Tr. 14, 16, 30. Defendant was not effectively seized until he stopped

running and was physically caught by Officer Tuma.  See Taylor, 462 F.3d at 1026 (finding that defendant was not seized when he threw a gun and other items, and the evidence was deemed abandoned.)  Consequently, defendant was not seized at the time he allegedly threw the gun away, and the gun was not the fruit of a seizure.

Finally, even if the seizure of the abandoned firearm was the product or fruit of defendant's seizure, this Court concludes that the seizure of defendant was lawful because it was supported by a reasonable suspicion that he had been or was engaging in criminal activity.  In this regard, this Court rejects defendant's argument that the officers did not have a reasonable, articulable suspicion to pursue and arrest him because he was merely leaving the parking lot when the officers arrived.

An investigatory stop is exempt from the Fourth Amendment's requirements that a seizure of a person be made pursuant to a warrant or predicated on probable cause. See United States v. Ortiz-Monroy, 332 F.3d 525, 528 (8th Cir. 2003) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1876, 1879-80, 20 L.Ed.2d 889 (1968)). "A Terry investigatory stop allows an officer to briefly to detain a citizen if the officer has reasonable suspicion that 'criminal activity may be afoot.'" Ortiz-Monroy, 332 F.3d at 528 (quoting Terry, 392 U.S. at 30, 88 S.Ct. at 1884); see also United States v. Johnson, 326 F.3d 1018, 1022 (8th Cir. 2003) (citation omitted) ("[A] law enforcement officer may stop and briefly question an individual if the officer has a reasonable suspicion that the person has committed or is about to commit a crime.").  "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; see also United States v. Poiter, 818 F.2d 679,

6

683 (8th Cir. 1987) (finding that to pass Fourth Amendment scrutiny, a <u>Terry</u>-type stop must be based on a reasonable articulable suspicion of criminal activity, rather than mere conjecture or hunches.  In deciding whether the requisite degree of suspicion exists, we view the agents' observations as a whole. . . .").  In assessing the reasonableness of the action, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  <u>Terry</u>, 392 U.S at 21-22 (citations omitted).

Here, Officers Greaves testified that as he and Officer Tuma drove into the parking lot at Club 200, he noticed an individual walking away.  Tr. 11.  As they continued further into the lot and drove around the corner of the bar, they saw that same individual begin to run.  Tr. 12.  Defendant's unprovoked flight gave rise to the officers' suspicion.  Evasive behavior is a pertinent factor in determining reasonable suspicion. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 124, 120 S.Ct. 673 (2000), <u>citing</u> <u>United States v. Brignoni-Ponce</u>, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); <u>Florida v. Rodriguez</u>, 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (per curiam); <u>United States v. Sokolow</u>, 490 U.S. 1, 8-9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

Further, Officer Greaves testified that he observed defendant clutching his waistband as he ran, and that in his past experience as a patrol officer, someone clutching their waistband suggests that they could be carrying and concealing something they do not want to drop, such as a gun or drugs.  Tr. 13.  Officer Greaves also testified that Club 200 was in a high-crime area in Minneapolis.  Tr. 8-9.  That the

stop occurred in a high-crime area is a relevant consideration in a <u>Terry</u> stop analysis. <u>Adams v. Williams</u>, 407 U.S. 143, 144, 147-148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

This Court finds that Officer Greaves' testimony that defendant was present in a location reputed for crime and ran from police without provocation, clutching his waistband as he ran, coupled with his throwing of an object under a car, provided more than an ample basis to support Officers Greaves' and Tuma's reasonable suspicion that defendant was engaged in criminal activity. <u>See</u> <u>Wardlow</u>, <u>supra</u> (police had reasonable suspicion to stop a defendant where the defendant fled a high crime area without provocation upon seeing police).[2]

For all of these reasons, this Court finds that the conduct by the officers that led to the ultimate seizure of the revolver, including the pursuit of defendant who fled from the parking lot, and the eventual detention of defendant, was valid under the Fourth Amendment.

---

[2] It is true that defendant did not completely match the physical description given to the officers of the individual reportedly carrying a gun, and that a person who more closely matched that description was standing in the Club 200 parking lot at the time the officers arrived. Nevertheless, the officers' decision to pursue defendant rather than question the individual who more closely matched the description given to them does not negate the officers' reasonable suspicion that defendant was engaging in criminal activity. Defendant was present in a high-crime area; he walked away when the officers arrived in the parking lot; he began running shortly thereafter, clutching his waistband as he ran; and while running, discarded a metal object. Based on these facts, this Court finds that the officers had a reasonable suspicion to pursue and stop the defendant. <u>See</u> <u>United States v. Walker</u>, 324 F.3d 1032, 1036 (8th Cir. 2003) ("'The determination of whether a government agent's suspicion is constitutionally reasonable is exceedingly fact specific. We examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be 'understood by those versed in the field of law enforcement.'") (quoting <u>United States v. Demoss</u>, 279 F.3d 632, 636 (8th Cir. 2002) (quoting <u>United States v. Cortez</u>, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

### III.     RECOMMENDATION

For the reasons set forth above, it is recommended that Alexisus Jarmon Mosby's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 17], be **DENIED**.


Dated:      October 25, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **November 5, 2006**.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **November 5, 2006** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.