UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| UNITED STATES OF AMERICA, | Case No. 06-CR-0280 (PJS/JSM) |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| ALEXISUS JARMON MOSBY, | |
| Defendant. | |

This matter is before the Court on defendant Alexisus Jarmon Mosby's motion to dismiss the government's petition to revoke his supervised release. For the reasons that follow, Mosby's motion is denied.

I. BACKGROUND

In December 2006, Mosby was convicted by a jury of being a felon in possession of a firearm, and in April 2007, he was sentenced to 108 months' imprisonment followed by three years of supervised release. ECF Nos. 62, 74. Included among the conditions of Mosby's supervised release was the requirement that he not commit a federal, state, or local crime. ECF No. 74 at 3-4.

Mosby was released from federal custody on June 30, 2015, and his term of supervised release began that day. *See* ECF No. 112 at 2:20-22. Mosby started violating the conditions of his supervised release almost immediately: He used cocaine, he lied to his probation officer about his employment status, and he ultimately absconded from

supervision. ECF No. 93, 108. On September 15, 2015, Mosby's probation officer filed a petition to revoke his supervised release. ECF No. 92. On that same day, the Court issued a warrant for Mosby's arrest. ECF Nos. 93-94.

Because Mosby had absconded, the United States Marshal was unable to locate him until October 13, 2015, at which point he was arrested and ordered detained. ECF Nos. 101, 103. On December 1, 2015, Mosby appeared before the Court for a revocation hearing. ECF No. 107. At that hearing, the Court found that Mosby had violated the conditions of his term of supervised release, revoked that term of supervised release, and sentenced him to 12 months' imprisonment followed by a new two-year term of supervised release. The sentencing judgment was entered the following day, December 2, 2015. ECF No. 108. The judgment included a set of conditions that Mosby would have to follow while on supervised release—conditions that were similar, but not identical, to the conditions that had applied during Mosby's original term of supervised release. *Id.* at 3-4.

On August 15, 2016—while Mosby was in federal prison, serving his post-revocation term of incarceration—Mosby was charged in state court with having burglarized a home on October 6, 2015. *See* ECF Nos. 118, 138; *see also* ECF No. 148 at 2. This burglary occurred while Mosby was serving his original term of supervised

release. But neither the Court nor anyone else (except Mosby) knew about the burglary when Mosby's original term of supervised release was revoked on December 2, 2015.

Mosby completed his post-revocation term of incarceration on October 12, 2016, and was immediately transferred from the custody of the Bureau of Prisons ("BOP") to the custody of the State of Minnesota. *See* ECF Nos. 118, 138. Five days later, on October 17, 2016, Mosby's probation officer filed a petition to revoke Mosby's term of supervised release again based on the burglary charges. *See* ECF Nos. 117, 118.

Mosby was convicted of second-degree burglary in state court on July 18, 2017. ECF No. 138 at 1. He is currently serving the sentence that the state judge imposed for that conviction. He will complete that sentence on September 4, 2018. *See* ECF Nos. 150-51.

On September 21, 2017, the Court granted the probation officer's amended petition to revoke Mosby's term of supervised release to reflect the fact that the burglary charges had resulted in a state-court conviction. *See* ECF Nos. 137-38. That same day, Mosby appeared before the Court for a revocation hearing. At that hearing, the Court raised the following issue with the parties:

The petition to revoke Mosby's supervised release was unclear about whether it was seeking to revoke his original (first) term of supervised release or his new (second) term of supervised release. The problem with revoking Mosby's first term of

supervised release was that it had already been revoked and replaced with the second term.  How could the Court revoke a term of supervised release that had already been revoked?  The problem with revoking Mosby's second term of supervised release was that the burglary occurred before that second term began and thus did not violate any of its conditions.  How could the Court revoke a term of supervised release based on conduct that occurred before that term was even imposed?  ECF No. 143 at 2:20-3:14.

The Court informed the parties that, as best as it could determine, the Eighth Circuit had not yet addressed the issue, and the case law of the other circuits was in conflict.  *Id.* at 3:16-5:6 (directing the parties to *United States v. Cross*, 846 F.3d 188 (6th Cir. 2017); *United States v. Brown*, 651 F. App'x 216 (4th Cir. 2016) (per curiam); *United States v. Wing*, 682 F.3d 861 (9th Cir. 2012); *United States v. Winfield*, 665 F.3d 107 (4th Cir. 2012); and *United States v. Johnson*, 243 F. App'x 666 (3d Cir. 2007)).

Following a discussion with counsel, the Court indefinitely stayed the revocation proceeding (given that Mosby would be serving his state sentence anyway) and ordered the parties to brief two issues:  (1) "Whether the Court has jurisdiction under 18 U.S.C. § 3583 to revoke [Mosby's] first term of supervised release, which began on June 30, 2015"; and (2) "Whether the Court has jurisdiction under 18 U.S.C. § 3583 to revoke [Mosby's] second term of supervised release, which effectively began on October 12, 2016."  ECF No. 139.

II. ANALYSIS

*A. Jurisdiction*

The briefing order framed the question before the Court as jurisdictional. The government resists this framing (although the government concedes that, as a practical matter, nothing turns on its argument). The government contends that the Court's power to revoke Mosby's supervised release does not relate to the scope of its jurisdiction, but instead to the scope of its statutory authority. Specifically, the government argues that 18 U.S.C. § 3231 gives the Court jurisdiction over Mosby "until final termination or expiration of the last term of supervised release or until the last period of imprisonment has been served, whichever occurs later." ECF No. 146 at 2. The government argues that 18 U.S.C. § 3583(e), "on the other hand, gives a district court authority to take certain actions—including termination, modification or revocation—with respect to supervised release, but it is not jurisdictional." *Id.* at 3.

The Court disagrees. Section 3231 gives district courts "original jurisdiction . . . of all offenses against the laws of the United States." The government's position is that § 3231 jurisdiction does not end when the district court enters final judgment, but instead continues until that judgment is satisfied by the defendant serving his full sentence (including any term of supervised release). The government's position is not without support; indeed, then-Judge Gorsuch endorsed the government's view in his separate opinion in *United States v. Spaulding*, 802 F.3d 1110, 1128 (10th Cir. 2015)

(Gorsuch, J., dissenting) ("This general grant of [§ 3231] jurisdiction is unqualified: it does not end after sentencing or any other artificial period of time.").

Unfortunately for the government, however, Judge Gorsuch was writing in dissent.[1] The weight of authority—including the authority in Judge Gorsuch's former circuit—holds that "§ 3231 jurisdiction ends when the district court enters final judgment in the criminal case and the time to appeal that judgment has expired." *United States v. James*, No. 17-1217, 2018 WL 1560251, at *3 (10th Cir. Mar. 29, 2018); *see also United States v. Benitez*, 720 F. App'x 509, 510 (10th Cir. 2018) ("§ 3231's grant of jurisdiction ended upon entry of the final judgment."); *United States v. Wahi*, 850 F.3d 296, 300 (7th Cir. 2017) (holding that entry of final judgment in a criminal case "ended the court's § 3231 jurisdiction"); *United States v. Lucido*, 612 F.3d 871, 874 (6th Cir. 2010) (holding that the district court's § 3231 jurisdiction ended when it "entered [an] unchallenged final judgment[]").

---

[1]Judge Gorsuch's view was shared by another judge, but he, too, was not speaking for his court. See *United States v. Merlino*, 785 F.3d 79, 89 (3d Cir. 2015) (Ambro, J., concurring) (arguing that § 3583(e) "appears to 'specify[] the remedial power[] of the court' to revoke supervised release rather than grant subject-matter jurisdiction.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (emphasis omitted)).

A district court's jurisdiction to modify, revoke, or terminate a term of supervised release therefore comes not from § 3231, but from § 3583(e), which authorizes a court to

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

Not surprisingly, then, the Eighth Circuit has consistently referred to questions of the authority of the district court under § 3583 as "jurisdictional." *See, e.g.*, *United States v. Prewitt*, 612 F. App'x 867, 867 (8th Cir. 2015) ("This court rejects as meritless Prewitt's argument that the district court lacked jurisdiction to revoke supervised release. *See* 18 U.S.C. § 3583(e)."); *United States v. Mosby*, 719 F.3d 925, 928 n.3 (8th Cir. 2013) (whether district court can revoke a term of supervised release is a question that "involves the district court's jurisdiction to supervise him under 18 U.S.C. § 3583"); *United States v. Love*, 471 F. App'x 563, 563 (8th Cir. 2012) ("The district court had jurisdiction to revoke Love's supervised release because the court found by a preponderance of the evidence that Love had violated several of his supervised-release conditions. *See* 18 U.S.C. § 3583(e)(3)."); *United States v. Hacker*, 450 F.3d 808, 814 (8th Cir. 2006) ("We review de novo the issue of whether the district court had authority to revoke [the defendant's]

supervised release.  Jurisdiction is a question of law subject to *de novo* review.") (citation and quotation marks omitted)).[2]

In sum, the Court concludes that its briefing order correctly framed the issue: The question before the Court is whether it has jurisdiction to revoke either of Mosby's terms of supervised release.

### B.  Merits

The government resists the Court's briefing order in a second way:  As noted, the briefing order—and, for that matter, this order—have referred to Mosby serving two terms of supervised release:  (1) an original term of supervised release that was imposed in April 2007 (when Mosby was sentenced for his crime of conviction), and (2) a new term of supervised release that was imposed in December 2015 (at the revocation hearing).  The government argues that, in fact, Mosby's second term of supervised release has never commenced—and that, to this day, Mosby is still serving his original term of supervised release.  If the government is correct, then the Court would obviously have authority to revoke Mosby's (original) term of supervised release on

---

[2] In *United States v. Griffin*—an appeal from a sentence imposed on revocation of supervised release—the Eighth Circuit briefly mentioned in an introductory paragraph that "[j]urisdiction in the district court was proper based upon 18 U.S.C. § 3231."  413 F.3d 806, 807 (8th Cir. 2005).  This appears to have been a misstatement; none of the parties argued that the district court did not have jurisdiction, and the Eighth Circuit does not appear to have focused on the issue.

account of the October 2015 burglary, which violated the conditions of that (original) term of supervised release.

There is no dispute that Mosby's original term of supervised release commenced on June 30, 2015, when he was released from the custody of the BOP after serving a 108-month sentence for being a felon in possession of a firearm. There is also no dispute that Mosby's original term of supervised release continued until *at least* October 12, 2016, when he was released from the custody of the BOP after serving a 12-month sentence for multiple violations of the conditions of his supervised release. This much is clear from the language of § 3583(e) and from *Johnson v. United States*, 529 U.S. 694 (2000). In *Johnson*, the Supreme Court (construing the pre-1994 version of § 3583) held that revocation of a term of supervised release does not "terminate" that term of release, and that a post-revocation term of incarceration "is not a 'term of imprisonment' that is . . . be[ing] served, but all or part of 'the term of supervised release.'" *Johnson*, 529 U.S. at 705; *id.* at 705-06 ("[U]nlike a 'terminated' order of supervised release, one that is 'revoked' continues to have some effect."). In other words, when Mosby was in federal prison serving his post-revocation term of incarceration, he was still serving his original term of supervised release, even though that term had been revoked.

The question, though, is whether Mosby's *second* term of supervised release commenced on October 12, 2016, when he finished serving his post-revocation term of

incarceration and was transferred to the custody of the State of Minnesota. That question is addressed by 18 U.S.C. § 3624(e), which provides:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. *The term of supervised release commences on the day the person is released from imprisonment* and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.

(Emphasis added).

Whether Mosby's second term of supervised release commenced on October 12, 2016, thus depends on what § 3624(e) means by "released from imprisonment." If "released from imprisonment" means "released from the custody of the BOP," then Mosby's second term of supervised release commenced on October 12, 2016, as on that day he was released from the custody of the BOP and transferred to the custody of the State of Minnesota. But if "released from imprisonment" means "released from confinement," then Mosby's second term of supervised release did not commence on October 12, 2016—and, indeed, has still not commenced—because Mosby was simply transferred from federal confinement to state confinement.

-10-

The Supreme Court closely examined the text of § 3624(e) in *United States v. Johnson*, 529 U.S. 53 (2000).[3] In *Johnson*, the defendant was convicted of multiple federal crimes and sent to prison. Years later, he successfully moved under 28 U.S.C. § 2255 to vacate two of his convictions. At that point, the time that he had served in prison had already exceeded the time to which he had been sentenced on the remaining convictions. Thus, he was immediately released from prison and began serving a term of supervised release.

The question before the Supreme Court was when the defendant's term of supervised release had commenced. The defendant argued "that his term of supervised release commenced not on the day he left prison confines but earlier, when his lawful term of imprisonment expired." *Id.* at 55-56. The Supreme Court disagreed, holding that "[r]elease takes place on the day the prisoner in fact is freed from confinement." *Id.* at 58. After quoting § 3624(e), the Supreme Court explained:

> The quoted language directs that a supervised release term does not commence until an individual "is released from imprisonment." There can be little question about the meaning of the word "release" in the context of imprisonment. It means "[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; . . . [t]o let loose again; to set free from restraint, confinement, or servitude; to set at liberty; to let go." Webster's New International Dictionary 2103 (2d ed. 1949).

---

[3]This is not the same decision as *Johnson v. United States*, 529 U.S. 694 (2000), which is cited above.

> As these definitions illustrate, *the ordinary, commonsense meaning of release is to be freed from confinement. To say respondent was released while still imprisoned diminishes the concept the word intends to convey.*
>
> The first sentence of § 3624(e) supports our construction. A term of supervised release comes "after imprisonment," once the prisoner is "released by the Bureau of Prisons to the supervision of a probation officer." Supervised release does not run while an individual remains in the custody of the Bureau of Prisons. . . .

*Id.* at 57 (emphasis added).

Because the defendant in *Johnson* had been confined *only* by the BOP, *Johnson* does not resolve the issue in this case. But the fact that seemed to matter to the Supreme Court was that the defendant was *confined*, not the identity of the sovereign doing the confining. *Johnson* sometimes referred to the fact that the defendant had been in federal custody, but nothing in *Johnson* explicitly attributed significance to the federal nature of the confinement.

The Eighth Circuit addressed a similar issue in *United States v. Mosby*, 719 F.3d 925 (8th Cir. 2013). There, the defendant (also named "Mosby") was sentenced to 15 years in prison after being convicted of unlawfully possessing ammunition. Shortly before the defendant completed serving his sentence in September 2007, the government moved under 18 U.S.C. § 4248 to have him civilly committed as a sexually dangerous person. The defendant remained in federal custody for another three years,

until the government dismissed the § 4248 proceeding. Mosby was released from civil detention and placed on supervised release.

A dispute then arose regarding when Mosby's term of supervised release had commenced. Mosby argued that it commenced in September 2007, when he completed serving his federal prison sentence. The Eighth Circuit disagreed:

> Mosby . . . argues that his term of supervised release began on September 14, 2007 because the commencement provision of § 3624(e) states that supervised release begins when the individual is released from "imprisonment." Mosby stresses that from September 2007 onward he was held in civil detention, pending the outcome of his § 4248 proceeding, rather than in imprisonment. . . .
>
> The Supreme Court interpreted the phrase "released from imprisonment" in § 3624(e) in *United States v. Johnson*, 529 U.S. 53 (2000). . . .
>
> A unanimous Supreme Court . . . [held] that an individual is "released from imprisonment" within the meaning of the commencement provision of § 3624(e) only after being "freed from confinement." *Id.* at 57. In other words, "[s]upervised release does not run while an individual remains in" federal custody. *Id.* . . . .
>
> Under § 3624(e) Mosby's supervised release "commence[d] on the day [he was] released from imprisonment," or as the Supreme Court made clear in *Johnson*, the day that he was "freed from confinement," 529 U.S. at 57. Thus, Mosby's term of supervised release did not begin until he was "freed from confinement" on November 15, 2010. *See id.* It would be contrary to the plain language of § 3624(e) and the Supreme Court's holding in *Johnson* for us to adopt Mosby's position that his term of

> supervised release began before he was released from
> federal custody.

*Id.* at 929.

Because the defendant in *Mosby*, like the defendant in *Johnson*, had been confined *only* by the BOP, *Mosby* also does not resolve the issue in this case. Again, though, what seemed to matter to the Eighth Circuit was the fact that the defendant was confined; the Eighth Circuit did not explicitly ascribe any significance to the fact that the confinement was federal, rather than state, or to the fact that the confinement was civil, rather than criminal.

Although *Johnson* and *Mosby* do not provide much guidance with respect to the issues now before the Court, the same cannot be said for *United States v. House*, 501 F.3d 928 (8th Cir. 2007), in which the Eighth Circuit confronted a situation that closely resembled the situation in this case. Like Mosby, the defendant in *House* finished serving a federal prison sentence and was immediately transferred to state custody to face state charges. After briefly confining the defendant in jail, the state released the defendant on bond, and the defendant began serving a one-year term of federal supervised release. Before that term had expired, however, the defendant was arrested on new state charges. The defendant was convicted and sentenced to serve a state prison sentence. Based on the same conviction, the district court revoked the defendant's federal supervised release, and the defendant appealed.

On appeal, the defendant argued that the district court erred in revoking his supervised release because he had not, in fact, *been* on supervised release at the time that he committed the new state crimes. Specifically, the defendant argued "that his term of supervised release did not begin when he was released from federal custody in September 2003 because he remained in the custody of state authorities, although free on bond." *Id.* at 929. The Eighth Circuit rejected the defendant's argument in a passage that is critically important for this case:

> Here, it is conceded that House was released from federal prison in September 2003. Under § 3624(e), that commenced his term of supervised release, *except for any period in which he was "imprisoned" by Missouri authorities*. As the references in § 3624(e) to concurrent probation and parole confirm, being free on bond is not the same as being "imprisoned" for purposes of this statute. Thus, House's supervised release commenced in September 2003 and was in effect when he committed multiple violations of its conditions.

*Id.* at 930 (emphases added).

In this passage, the Eighth Circuit was clearly addressing the question of when the defendant's term of supervised release *commenced*. The Eighth Circuit separately addressed the question of whether and to what extent the defendant's term of supervised release had been *tolled* after being commenced, finding that "the one-year term of supervised release was tolled in June 2004 when House began serving an eight-year prison sentence imposed by the State of Missouri." *Id.*

-15-

If the Eighth Circuit read § 3624(e) to mean that a term of supervised release always commences when the defendant is released from *federal* custody, then it would have been very easy for the Eighth Circuit to say that. The Eighth Circuit could have simply said that House's term of supervised release commenced on the date that he was released from federal prison—period. And if that were the view of the Eighth Circuit, then *it would not have mattered* whether "being free on bond is . . . the same as being 'imprisoned' for purposes of this statute." *Id.* at 930. There would have been no need for the Eighth Circuit to address that question, because nothing that happened after House was released from *federal* custody could have had any impact on the date on which his term of supervised release commenced.

But the Eighth Circuit did not simply say that House's term of supervised release commenced when he was released from federal custody. Instead, it added the "except" clause: "except for any period in which he was 'imprisoned' by Missouri authorities." In other words, the Eighth Circuit said that, if being released on bond *was* "the same as being 'imprisoned' for purposes of this statute," then that state imprisonment *would* have affected the date on which House's term of supervised release commenced.

*House*'s reading of § 3624(e) is certainly not the only possible reading of the statute, but it does make a certain amount of sense as a policy matter. Consider the facts of this case:

If Mosby's new term of supervised release began when he was transferred to state custody (as Mosby argues), then he is currently serving his new term of supervised release.  But that new term was immediately tolled under § 3624(e) because Mosby is "imprisoned in connection with a conviction for a . . . State . . . crime."  That means that on the day that Mosby walks out of jail, he will still be on "day one" of his new term of supervised release.

If Mosby's new term of supervised release did not begin when he was transferred to state custody (as *House* seems to hold), then he is currently serving his original term of supervised release.  That term is also tolled on account of § 3624(e).  When Mosby walks out of jail, he will be "released from imprisonment," and his new term of supervised release will commence.

Either way, then, when Mosby walks out of jail, he will be serving "day one" of his new term of supervised release.  The only difference is that, under *House*'s reading of § 3624(e), the Court has the authority to respond to the fact that Mosby violated the terms of his supervised release by committing a felony burglary.  Under the alternative reading of § 3624(e), the Court might be helpless to do anything about Mosby's violation.  It would be troubling if a federal court had no way to respond to such a serious violation of the conditions of supervised release by a defendant who remains under the court's supervision.

III.  CONCLUSION

Under *House*, Mosby's second term of supervised release has not yet begun, because Mosby was not "released from imprisonment" when he was transferred from a federal prison to a state prison.  18 U.S.C. § 3624(e).  Thus, Mosby is still serving his first term of supervised release, and the Court has authority to revoke that term of supervised release because Mosby violated the conditions of that supervised release by burglarizing a home in October 2015.

Of course, the fact that the Court has authority to revoke Mosby's supervised release does not mean that the Court will do so.  But the Court leaves that question for the revocation hearing.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, defendant Alexisus Jarmon Mosby's motion to dismiss [ECF No. 147] is DENIED.

Dated:  July 11, 2018

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge